# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

WILSON RODRIGUEZ JR.,

        Plaintiff,

   v.

CODY T. LISTER, LYNETTE LISTER,
and JEFF LISTER,

        Defendants,

Case No.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants CODY and JEFF LISTER remove

the instant action from the Circuit Court of Milwaukee County, Wisconsin to this United States

District Court for the Eastern District of Wisconsin, on the following grounds:

      1.      On March 7, 2014, Plaintiff Wilson Rodriguez Jr. filed a Summons and

Complaint ("Compl.") against Defendants in the Circuit Court of Milwaukee County, Illinois

(the "state court"), and the action was assigned case number 2022-CV-004263. *See* **Exhibit A**.

      2.      On July 11, 2022, Cody Lister was served.

      3.      On July 13, 2022, Jeff Lister was served.[1]

      4.      The United States District Court for the Eastern District of Wisconsin has

jurisdiction over this matter pursuant to 28 U.S.C. section 1331. Under section 1331, federal

---

[1] Defendant Lynette Lister has not yet been served.

1

"district courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

5. The Complaint brings a federal claim against Cody Lister under Section 15 of the Securities Exchange Act and Rule 10b-5, who allegedly acted an investment advisor in managing, investing, and trading Plaintiff's cryptocurrency assets that are regulated as securities under the Securities Exchange Act.

6. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the alleged state law claims. The Complaint alleges multiple related state law claims that arise out of same transaction and occurrence concerning Lister's alleged cryptocurrency investment scheme that involves Plaintiff's cryptocurrency assets.

7. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3) because it is filed within 30 days of the date Plaintiff served on Defendant the Summons and the Complaint.

8. Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff.

9. The state court from which this action was removed and in which this action was commenced is within this Court's district and division. Accordingly, venue is proper in this District under 28 U.S.C. §§ 1441(a) and 1391.

10. This Notice of Removal will be filed promptly with the Clerk of the Circuit Court of Milwaukee County, Wisconsin, as required by 28 U.S.C. § 1446(d).

11. Written notice of this Notice of Removal is also being served upon Plaintiff, as required by 28 U.S.C. § 1446(d), by serving a copy of the Notice of Removal on Plaintiff's counsel of record for this case in accordance with the appended Certificate of Service.

2

WHEREFORE, Defendants respectfully request that this Court take jurisdiction of this action and issue all necessary orders and process to remove it from the Circuit Court of Milwaukee County, Wisconsin to the United States District Court for the Eastern District of Wisconsin.

Dated: August 10, 2022

Respectfully submitted,

/s/Michael Haeberle
Michael D. Haeberle
Patterson Law Firm, LLC
1437 N. Prospect Ave., Unit 203
Milwaukee, WI 53202
Tel. 414-840-8001
WI Bar No. 1104367
mhaeberle@pattersonlawfirm.com

*Attorney for Defendants CODY T. LISTER and JEFF LISTER.*

3

**CERTIFICATE OF SERVICE**

The undersigned, a non-attorney, hereby certifies that she caused to be filed and that she served a true and correct copy of the foregoing **Notice of Removal** on the following counsel for the Plaintiff, via e-mail on August 10, 2022.

> Patrick Lubenow
> SmithAmundsen, LLC
> 330 East Kilbourn Avenue
> Suite 1100, Tower 1
> Milwaukee, WI 53202-3170
> plubenow@smithamundsen.com

/s/Christine Marte
Christine Marte

# EXHIBIT A

FILED
07-06-2022
George L. Christenson
Clerk of Circuit Court
2022CV004263
Honorable Pedro Colon-18
Branch 18

## STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY

WILSON RODRIGUEZ JR.

        Plaintiff,

vs.

CODY T. LISTER, LYNETTE LISTER,
and JEFF LISTER

        Defendant.

Case No.:
Classification Code: 30303

**JURY DEMANDED**

### COMPLAINT

NOW COMES Plaintiff, WILSON RODRIGUEZ (hereinafter referred to as "Plaintiff"), by and through his attorneys, SmithAmundsen LLC, and for his Complaint against CODY T. LISTER (hereinafter referred to as or "Lister"), LYNETTE LISTER, and JEFF LISTER (collectively "Defendants"), states as follows:

#### THE PARTIES

1.    Plaintiff Wilson Rodriguez is and was at all times relevant to this Complaint an individual who resided and was domiciled in Milwaukee County, Wisconsin.

2.    Defendant Lister resides at 4221 S 6th St. Lot D23 in Milwaukee, Wisconsin. At all times relevant to this Complaint, he was a resident and domiciliary of Milwaukee County, Wisconsin.

3.    LYNETTE LISTER resides at 4763 S Lake Dr, Cudahy, WI, 53110. At all times relevant to this Complaint, she was a resident and domiciliary of Milwaukee County, Wisconsin.

1

4.      JEFF LISTER resides at 4763 S Lake Dr, Cudahy, WI, 53110. At all times relevant to this Complaint, he was a resident and domiciliary of Milwaukee County, Wisconsin.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to WIS. STAT. § 801.04 and this Court has personal jurisdiction over the Defendant pursuant to WIS. STAT. §§ 801.05(1)(d) and (3).

6.      Venue is proper in this Court pursuant to WIS. STAT. § 801.50(2).

## FACTUAL BACKGROUND

7.      For the past several years, Defendants have been engaged in a fraudulent scheme to "manage" cryptocurrency and other digital assets on behalf of others for fee.

8.      JEFF LISTER and LYNETTE LISTER are the parents of Lister.

9.      Lister accepted funds/digital assets from over ten other individuals and invested said funds/digital assets for a fee.

10.     Upon information and belief, this "fee" was pooled in accounts with funds that belonged to JEFF and LYNETTE LISTER.

11.     Upon information and belief, JEFF and LYNETTE LISTER benefitted from the "fee" assessed by Lister for "managing" the financial assets of Lister and others.

12.     Upon information and belief, Lister does not have the proper certification that would permit him to lawfully manage, invest, and trade funds on behalf of others.

13.     Money managers, investment consultants, and financial planners are regulated in the United States as "investment advisers" under the U.S. Investment Advisers Act of 1940 ("Advisers Act" or "Act") or similar state statutes.

2

14.    Lister failed to register with the United States Securities and Exchange Commission ("SEC"), the United States Commodity Futures Trading Commission ("CFTC"), or any other potentially relevant regulator.

15.    Lister knew or reasonably should have known that registration was required, as the SEC had previously stated that digital assets may be issuances of securities that must comply with federal securities laws. The SEC and CFTC has also filed numerous lawsuits against individuals and companies for the unlawful issuance of cryptocurrencies / digital assets that are securities or commodities.

16.    Lister does not have any certifications or proper registrations that would permit him to lawfully invest cryptocurrency/digital assets/money/funds on behalf of others.

17.    Lister misrepresented to others that he was experienced and legally able to handle cryptocurrency funds on behalf of others. Lister specifically stated in a video chat that he was permitted to trade cryptocurrency on behalf of others.

18.    Lister made assurances and guarantees to Plaintiff and others on numerous occasions of a successful profit return. Lister specifically represented to Plaintiff on multiple occasions that he could "double" his investment.

19.    Lister repeatedly promised Plaintiff that he would double his money.

20.    JEFF and LYNETTE LISTER supported Lister's effort to unlawfully invest and manage money on behalf of others.

21.    Upon information and behalf, JEFF and LYNETTE LISTER contributed money to Lister to support his efforts to unlawfully invest money on behalf of others.

22.    JEFF and LYNETTE LISTER had knowledge of Lister's activities and communicated with Plaintiff on Lister's behalf.

3

23.    LYNETTE LISTER first met Plaintiff in a transaction as his real estate agent.

24.    LYNETTE LISTER encouraged Plaintiff to discuss cryptocurrency with Lister because Lister allegedly had a lot of knowledge regarding cryptocurrency investments/trading.

25.    Upon information and belief, JEFF LISTER assisted Lister in the management of other individuals' assets.

26.    Beginning in August of 2021, Lister offered to invest various cryptocurrency and digital assets on behalf of Plaintiff for a fee.

27.    On or about August 10, 2021, Plaintiff sent Lister $4,450.00 for Lister to invest and generate a return.

28.    On August 19, 2021, Lister and Plaintiff signed a written agreement wherein Lister agreed to "manage" funds in cryptocurrency for a fee of 3% upon request. See Copy of Written Agreement attached hereto as Exhibit "A." (hereinafter the "Agreement").

29.    The Agreement further represented that Lister would send any funds back within one (1) week upon request. See Exhibit A.

30.    On August 19, 2021, Lister sent a text message to Plaintiff stating "I have made you $2000 already would you like to use your profits I can send them to you."

31.    Lister initially represented that Plaintiff was the other "client" he was pooling the digital assets in accounts/wallets for his parents and other individuals.

32.    However, on or about October 27, 2021, Lister told Plaintiff in a text message that he "cashed out all of his little guys."

33.    By October of 2021, Plaintiff sent approximately $100,000 in digital assets to Lister to invest.

4

34.     During a video chat on or about February 7, 2022, Lister acknowledged a current balance of $150,000 in assets belonging to Plaintiff.

35.     Plaintiff demanded that Lister return the more than $150,000 owed to Plaintiff.

36.     In response to the demand, Lister texted Plaintiff stating "Yes ofc [of course] I did shroomies yesterday so was a little out of it to say the least."

37.     On February 13, 2022, Plaintiff continued to request an update on return of his funds in order to purchase real estate.

38.     Lister responded in text stating "I'm just waiting for a response from accountant to make sure I am doing this right. Anticipating a response tomorrow."

39.     Plaintiff continued to request return of this funds through March and April of 2022.

40.     Lister continued to make excuses for why Lister could not return Plaintiff's balance of more than $150,000 within the time frame prescribed by the Agreement.

41.     On March 3, 2022, Lister sent Plaintiff a screenshot of an account showing over $5 million dollar in funds:



42.     On March 7, 2022, Lister sent a message to Plaintiff stating, "Okay so, I really want to wire you funds but don't want to wait for wells you know. I have BMO Harris that can wire directly into whatever bank that isn't frozen. "

43.     On March 10, 2022, Lister falsely claimed that he sent an ACH payment of the to Plaintiff.

44.     On March 16, 2022, Plaintiff asked for proof that the ACH payment was sent. Lister responded, "yeah, it's still in transit just check."

45.     On March 24, 2022, LYNETTE LISTER promised to assist Plaintiff in recovering assets from Lister.

46.     LYNETTE LISTER stated that JEFF LISTER's entire retirement funds were being invested by Lister in accounts.

47.     During the remainder of March of 2022 and April, Plaintiff continued to demand the return of the more than $150,000 owed to him.

48.     On April 6, 2022, LYNETTE LISTER advised that Lister was unable to transfer funds due to an issue with another one of Lister's clients.

49.     LYNETTE LISTER told Plaintiff that she was attempt to persuade Lister to return Plaintiff's funds.

50. On April 6, 2022, LYNETTE LISTER stated, "Jeff's [LISTER] been handling it a lot with him because I can't handle the stress of it" and "[h]e has the funds, I know he has the funds, I've seen the funds."

51. Plaintiff wrote to JEFF LISTER demanding return of his funds.

52. JEFF LISTER failed to respond to any of Plaintiff's demand for return of funds.

53. At all relevant times, Lister and the Defendants failed to return the funds owed to him.

Case 2:22-cv-00918-NJ   Filed 08/10/22   Page 11 of 32   Document 1

54.     Defendants have secured financial gain from Plaintiff by refusing to return his assets.

55.     Defendants pooled their assets together to further a scheme to defraud Plaintiff and others of their assets. This is supported by the screenshot above showing more than $5 million in assets were held in the same account.

56.     Upon information and belief, the $5 million in assets shown in the screenshot in Paragraph 41 includes retirement accounts belonging to JEFF LISTER.

### COUNT I. CONVERSION (ALL DEFENDANTS)

57.     Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 56 above, as if fully set forth herein.

58.     Plaintiff had and continues to have an absolute and unconditional right to the immediate return of the funds owed to him.

59.     The funds are held in wallets for digital assets that are controlled by Defendants.

60.     Defendants unlawfully assumed control over assets that rightfully belong to Plaintiff without the consent or authorization of Plaintiff and without lawful authority.

61.     Plaintiff has suffered losses in excess of $150,000 dollars.

62.     As a result of Defendants wrongful acts, Plaintiff has been damaged in an amount to be determined at trial.

### COUNT II. BREACH OF CONTRACT (LISTER ONLY)

63. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 57 above, as if fully set forth herein.

64. Plaintiff had and continues to have an absolute and unconditional right to the immediate return of more than $150,000 owed to him.

7

65. Exhibit A to this Complaint states that Lister was to return any funds within one (1) week upon request.

66. Lister unlawfully assumed control over assets that rightfully belong to Plaintiff without the consent or authorization of Plaintiff and without lawful authority.

67. Lister has breached a written agreement (Exhibit "A") by failed to return the assets owed to Plaintiff within one (1) week.

68. Plaintiff has suffered losses in excess of $150,000 dollars.

69. As a result of Defendants wrongful acts, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT III. COMMON LAW FRAUD (ALL DEFENDANTS)

70. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 69 above, as if fully set forth herein.

71. Defendants authorized and/or made representations concerning the investment opportunity with Lister.

72. Defendants had specific and personal knowledge that Lister was not lawfully able to take funds to investment on behalf of others.

73. Defendants repeatedly made and/or were aware of statements that were false or misleading.

74. The misrepresentations and omissions alleged herein include:

 a. Failure to disclose all the risks associated with Lister's business model and providing false comfort by making statements indicating that it would be a profitable investment scheme;
 b. Repeatedly making false statements regarding the profitability of investing with Lister, including repeated comments guaranteeing a successful investment;
 c. Deliberately concealing the investment commingling of assets and failing to disclose the same;
 d. Reneging on promises to return funds back to Plaintiff;
 e. Deliberately investing in financially unsound digital assets

8

    f.   Intentionally failing to comply with U.S. securities regulations in regard to registration.

    g.  Misrepresenting that funds had been sent to Plaintiff on numerous occasions,

    h.  Other misrepresentations to be proven at trial after the completion of discovery.

75. Defendants' representations and omissions were materially false and misleading when made. These representations and omission were made intentionally or with reckless disregard for the truth.

76. Defendants made these misrepresentations and omissions to Plaintiff directly with knowledge that Plaintiffs would rely on them.

77. Based up on their superior knowledge and expertise, their incomplete and misleading disclosures, and in light of the fact that Plaintiff did not have access to material facts that were uniquely within Defendants' knowledge, Defendants had an affirmative duty to provide full, complete, and accurate disclosure of these material facts.

78. Plaintiff reasonably and justifiably relied to their detriment on Defendants' misrepresentations and omissions and on Defendants' affirmative duty to provide full, complete, and accurate disclosures to them.

79. Defendants' misrepresentations and omissions induced Plaintiffs to invest with Lister, which they would not have done had Defendants been truthful.

80. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff has suffered damages.

81. Because Defendants' conduct was an intentional disregard for the rights of the plaintiff and Plaintiffs also are entitled to punitive damages.

## COUNT IV. VIOLATIONS OF SECTION 15 OF THE EXCHANGE ACT AND RULE 10b-5 (LISTER ONLY)

9

82. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 81 above, as if fully set forth herein.

83. This Count is asserted against Lister under Section 15 of the Securities Act, 15 U.S.C. § 77o.

84. Defendant Lister, by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts was, at the time of the wrongs alleged herein, a controlling person within the meaning of Section 15 of the Securities Act.

85. Defendant Lister had the power and influence and exercised the same to cause an unlawful investment scheme.

86. Defendant Lister continuously touted his credentials as a high-experienced, cryptocurrency expert.

87. Lister knew or should have known that he was required to seek proper registration though the SEC.

88. By virtue of the conduct alleged herein, Lister is liable for the wrongful conduct complained of herein and is liable to Plaintiff for rescission and/or damages suffered.

## COUNT V. CIVIL CONSPIRACY (ALL DEFENDANTS)

89. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 89 above, as if fully set forth herein.

90. Defendants acted in concert to further the fraudulent and unlawful investment scheme as outlined above.

91. All of the Defendants had specific and personal knowledge of Lister's actions and contributed financial resources and other support to Lister to further this scheme.

10

92. Defendants together knowingly failed to make the disclosures outlined above, made material misrepresentations, and omitted key information regarding the unlawful scheme.

93. Defendants knowingly conspired with Lister in his misrepresentations and/or failures to disclose material facts regarding the unlawful investment scheme.

94. Defendants knowingly conspired with Lister to promote Lister's unlawful investment scheme.

95. Defendants proceeded to commit overt acts in furtherance of the conspiracy by in fact by contributing financial support, promoting Lister's abilities, and making representations of Lister's competency.

96. In doing so, Defendants agreed to violate or disregard the law.

97. Defendants' collective conduct, misrepresentations, and/or omissions were unlawful, as alleged more fully above in Counts of this Complaint.

98. Plaintiff and justifiably relied upon the unlawful misrepresentations and/or omissions Defendants made as part of the conspiracy.

99. As a result of Defendants' conspiracy, Plaintiff incurred damages as set forth more fully above.

100.    Absent Defendants' conspiracy, Plaintiff would not have invested any money with Lister.

101.    As a result of Defendants' conspiracy, Plaintiff and the Class have been damaged and are entitled to recoverable relief.

### COUNT VI. UNJUST ENRICHMENT (ALL DEFENDANTS)

102.    Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action against all Defendants.

11

103.     By contributing approximately $100,000 to Lister and the Defendants, Plaintiff conferred a benefit upon Defendants, who unjustly received and retained economic gain.

104.     Defendants pooled financial resources and used Plaintiff's capital to reap an economic benefitted.

105.     Defendants appreciated or knew that the investment scheme was unlawful and that material misrepresentations were made in furtherance of the scheme.

106.     Defendants accepted, received, and/or retained economic benefit from Plaintiff and the Class by knowingly refusing to return his funds when they were repeatedly demanded.

107.     Under the circumstances, it was inequitable for Defendants to retain profits and the benefit of the bargain, and Plaintiff is entitled to commensurate relief.

108.     Plaintiff is entitled to compensatory damages in excess of $150,000.

WHEREFORE, Plaintiff demand judgments against Defendants as follows: Declaring that Lister is liable to Plaintiff under Section 15 of the Securities Act; Requiring an accounting of the funds and assets rightfully belonging to Plaintiffs; Ordering rescission of the investments made by Plaintiffs in the unregistered securities, and/or compensatory damages;

    A. Ordering compensatory damages in excess of $150,000;
    B.  Awarding punitive damages in the amount allowable under Wisconsin law;
    C. Awarding Plaintiffs pre-judgment interest;
    D. Awarding Plaintiffs the costs of this action, including reasonable attorneys' fees and disbursements; and
    E. Granting such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A TWELVE (12) PERSON JURY**

Dated this 6th day of July, 2022.

                              SmithAmundsen, LLC
                              Attorneys for Plaintiff

                              *Patrick J. Lubenow – electronically signed*

By:         _____

                              Patrick Lubenow
                              State Bar No. 1006600

MAILING ADDRESS
330 East Kilbourn Avenue
Suite 1100, Tower 1
Milwaukee WI 53202-3170
Phone No. (414) 847-6138
plubenow@smithamundsen.com

13

**STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY**

WILSON RODRIGUEZ JR.

        Plaintiff,

vs.

CODY T. LISTER, LYNETTE LISTER,
and JEFF LISTER

        Defendant.

Case No.:
Classification Code: 30303

**JURY DEMANDED**

## COMPLAINT

NOW COMES Plaintiff, WILSON RODRIGUEZ (hereinafter referred to as "Plaintiff"), by and through his attorneys, SmithAmundsen LLC, and for his Complaint against CODY T. LISTER (hereinafter referred to as or "Lister"), LYNETTE LISTER, and JEFF LISTER (collectively "Defendants"), states as follows:

### THE PARTIES

1.    Plaintiff Wilson Rodriguez is and was at all times relevant to this Complaint an individual who resided and was domiciled in Milwaukee County, Wisconsin.

2.    Defendant Lister resides at 4221 S 6th St. Lot D23 in Milwaukee, Wisconsin. At all times relevant to this Complaint, he was a resident and domiciliary of Milwaukee County, Wisconsin.

3.    LYNETTE LISTER resides at 4763 S Lake Dr, Cudahy, WI, 53110. At all times relevant to this Complaint, she was a resident and domiciliary of Milwaukee County, Wisconsin.

1

4.     JEFF LISTER resides at 4763 S Lake Dr, Cudahy, WI, 53110. At all times relevant to this Complaint, he was a resident and domiciliary of Milwaukee County, Wisconsin.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this lawsuit pursuant to WIS. STAT. § 801.04 and this Court has personal jurisdiction over the Defendant pursuant to WIS. STAT. §§ 801.05(1)(d) and (3).

6.     Venue is proper in this Court pursuant to WIS. STAT. § 801.50(2).

## FACTUAL BACKGROUND

7.     For the past several years, Defendants have been engaged in a fraudulent scheme to "manage" cryptocurrency and other digital assets on behalf of others for fee.

8.     JEFF LISTER and LYNETTE LISTER are the parents of Lister.

9.     Lister accepted funds/digital assets from over ten other individuals and invested said funds/digital assets for a fee.

10.     Upon information and belief, this "fee" was pooled in accounts with funds that belonged to JEFF and LYNETTE LISTER.

11.     Upon information and belief, JEFF and LYNETTE LISTER benefitted from the "fee" assessed by Lister for "managing" the financial assets of Lister and others.

12.     Upon information and belief, Lister does not have the proper certification that would permit him to lawfully manage, invest, and trade funds on behalf of others.

13.     Money managers, investment consultants, and financial planners are regulated in the United States as "investment advisers" under the U.S. Investment Advisers Act of 1940 ("Advisers Act" or "Act") or similar state statutes.

2

14.     Lister failed to register with the United States Securities and Exchange Commission ("SEC"), the United States Commodity Futures Trading Commission ("CFTC"), or any other potentially relevant regulator.

15.     Lister knew or reasonably should have known that registration was required, as the SEC had previously stated that digital assets may be issuances of securities that must comply with federal securities laws. The SEC and CFTC has also filed numerous lawsuits against individuals and companies for the unlawful issuance of cryptocurrencies / digital assets that are securities or commodities.

16.     Lister does not have any certifications or proper registrations that would permit him to lawfully invest cryptocurrency/digital assets/money/funds on behalf of others.

17.     Lister misrepresented to others that he was experienced and legally able to handle cryptocurrency funds on behalf of others. Lister specifically stated in a video chat that he was permitted to trade cryptocurrency on behalf of others.

18.     Lister made assurances and guarantees to Plaintiff and others on numerous occasions of a successful profit return. Lister specifically represented to Plaintiff on multiple occasions that he could "double" his investment.

19.     Lister repeatedly promised Plaintiff that he would double his money.

20.     JEFF and LYNETTE LISTER supported Lister's effort to unlawfully invest and manage money on behalf of others.

21.     Upon information and behalf, JEFF and LYNETTE LISTER contributed money to Lister to support his efforts to unlawfully invest money on behalf of others.

22.     JEFF and LYNETTE LISTER had knowledge of Lister's activities and communicated with Plaintiff on Lister's behalf.

3

23.    LYNETTE LISTER first met Plaintiff in a transaction as his real estate agent.

24.    LYNETTE LISTER encouraged Plaintiff to discuss cryptocurrency with Lister because Lister allegedly had a lot of knowledge regarding cryptocurrency investments/trading.

25.    Upon information and belief, JEFF LISTER assisted Lister in the management of other individuals' assets.

26.    Beginning in August of 2021, Lister offered to invest various cryptocurrency and digital assets on behalf of Plaintiff for a fee.

27.    On or about August 10, 2021, Plaintiff sent Lister $4,450.00 for Lister to invest and generate a return.

28.    On August 19, 2021, Lister and Plaintiff signed a written agreement wherein Lister agreed to "manage" funds in cryptocurrency for a fee of 3% upon request. See Copy of Written Agreement attached hereto as Exhibit "A." (hereinafter the "Agreement").

29.    The Agreement further represented that Lister would send any funds back within one (1) week upon request. See Exhibit A.

30.    On August 19, 2021, Lister sent a text message to Plaintiff stating "I have made you $2000 already would you like to use your profits I can send them to you."

31.    Lister initially represented that Plaintiff was the other "client" he was pooling the digital assets in accounts/wallets for his parents and other individuals.

32.    However, on or about October 27, 2021, Lister told Plaintiff in a text message that he "cashed out all of his little guys."

33.    By October of 2021, Plaintiff sent approximately $100,000 in digital assets to Lister to invest.

4

34.     During a video chat on or about February 7, 2022, Lister acknowledged a current balance of $150,000 in assets belonging to Plaintiff.

35.     Plaintiff demanded that Lister return the more than $150,000 owed to Plaintiff.

36.     In response to the demand, Lister texted Plaintiff stating "Yes ofc [of course] I did shroomies yesterday so was a little out of it to say the least."

37.     On February 13, 2022, Plaintiff continued to request an update on return of his funds in order to purchase real estate.

38.     Lister responded in text stating "I'm just waiting for a response from accountant to make sure I am doing this right. Anticipating a response tomorrow."

39.     Plaintiff continued to request return of this funds through March and April of 2022.

40.     Lister continued to make excuses for why Lister could not return Plaintiff's balance of more than $150,000 within the time frame prescribed by the Agreement.

41.     On March 3, 2022, Lister sent Plaintiff a screenshot of an account showing over $5 million dollar in funds:



42.     On March 7, 2022, Lister sent a message to Plaintiff stating, "Okay so, I really want to wire you funds but don't want to wait for wells you know. I have BMO Harris that can wire directly into whatever bank that isn't frozen. "

43.     On March 10, 2022, Lister falsely claimed that he sent an ACH payment of the to Plaintiff.

44.     On March 16, 2022, Plaintiff asked for proof that the ACH payment was sent. Lister responded, "yeah, it's still in transit just check."

45.     On March 24, 2022, LYNETTE LISTER promised to assist Plaintiff in recovering assets from Lister.

46.     LYNETTE LISTER stated that JEFF LISTER's entire retirement funds were being invested by Lister in accounts.

47.     During the remainder of March of 2022 and April, Plaintiff continued to demand the return of the more than $150,000 owed to him.

48.     On April 6, 2022, LYNETTE LISTER advised that Lister was unable to transfer funds due to an issue with another one of Lister's clients.

49.     LYNETTE LISTER told Plaintiff that she was attempt to persuade Lister to return Plaintiff's funds.

50. On April 6, 2022, LYNETTE LISTER stated, "Jeff's [LISTER] been handling it a lot with him because I can't handle the stress of it" and "[h]e has the funds, I know he has the funds, I've seen the funds."

51. Plaintiff wrote to JEFF LISTER demanding return of his funds.

52. JEFF LISTER failed to respond to any of Plaintiff's demand for return of funds.

53. At all relevant times, Lister and the Defendants failed to return the funds owed to him.

6

54.    Defendants have secured financial gain from Plaintiff by refusing to return his assets.

55.    Defendants pooled their assets together to further a scheme to defraud Plaintiff and others of their assets. This is supported by the screenshot above showing more than $5 million in assets were held in the same account.

56.    Upon information and belief, the $5 million in assets shown in the screenshot in Paragraph 41 includes retirement accounts belonging to JEFF LISTER.

### COUNT I. CONVERSION (ALL DEFENDANTS)

57.    Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 56 above, as if fully set forth herein.

58.    Plaintiff had and continues to have an absolute and unconditional right to the immediate return of the funds owed to him.

59.    The funds are held in wallets for digital assets that are controlled by Defendants.

60.    Defendants unlawfully assumed control over assets that rightfully belong to Plaintiff without the consent or authorization of Plaintiff and without lawful authority.

61.    Plaintiff has suffered losses in excess of $150,000 dollars.

62.    As a result of Defendants wrongful acts, Plaintiff has been damaged in an amount to be determined at trial.

### COUNT II. BREACH OF CONTRACT (LISTER ONLY)

63. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 57 above, as if fully set forth herein.

64. Plaintiff had and continues to have an absolute and unconditional right to the immediate return of more than $150,000 owed to him.

7

65. Exhibit A to this Complaint states that Lister was to return any funds within one (1) week upon request.

66. Lister unlawfully assumed control over assets that rightfully belong to Plaintiff without the consent or authorization of Plaintiff and without lawful authority.

67. Lister has breached a written agreement (Exhibit "A") by failed to return the assets owed to Plaintiff within one (1) week.

68. Plaintiff has suffered losses in excess of $150,000 dollars.

69. As a result of Defendants wrongful acts, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT III. COMMON LAW FRAUD (ALL DEFENDANTS)

70. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 69 above, as if fully set forth herein.

71. Defendants authorized and/or made representations concerning the investment opportunity with Lister.

72. Defendants had specific and personal knowledge that Lister was not lawfully able to take funds to investment on behalf of others.

73. Defendants repeatedly made and/or were aware of statements that were false or misleading.

74. The misrepresentations and omissions alleged herein include:

    a. Failure to disclose all the risks associated with Lister's business model and providing false comfort by making statements indicating that it would be a profitable investment scheme;
    b. Repeatedly making false statements regarding the profitability of investing with Lister, including repeated comments guaranteeing a successful investment;
    c. Deliberately concealing the investment commingling of assets and failing to disclose the same;
    d. Reneging on promises to return funds back to Plaintiff;
    e. Deliberately investing in financially unsound digital assets

8

      f.   Intentionally failing to comply with U.S. securities regulations in regard to registration.

      g.  Misrepresenting that funds had been sent to Plaintiff on numerous occasions,

      h.  Other misrepresentations to be proven at trial after the completion of discovery.

75. Defendants' representations and omissions were materially false and misleading when made. These representations and omission were made intentionally or with reckless disregard for the truth.

76. Defendants made these misrepresentations and omissions to Plaintiff directly with knowledge that Plaintiffs would rely on them.

77. Based up on their superior knowledge and expertise, their incomplete and misleading disclosures, and in light of the fact that Plaintiff did not have access to material facts that were uniquely within Defendants' knowledge, Defendants had an affirmative duty to provide full, complete, and accurate disclosure of these material facts.

78. Plaintiff reasonably and justifiably relied to their detriment on Defendants' misrepresentations and omissions and on Defendants' affirmative duty to provide full, complete, and accurate disclosures to them.

79. Defendants' misrepresentations and omissions induced Plaintiffs to invest with Lister, which they would not have done had Defendants been truthful.

80. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff has suffered damages.

81. Because Defendants' conduct was an intentional disregard for the rights of the plaintiff and Plaintiffs also are entitled to punitive damages.

## **COUNT IV. VIOLATIONS OF SECTION 15 OF THE EXCHANGE ACT AND RULE 10b-5 (LISTER ONLY)**

9

82. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 81 above, as if fully set forth herein.

83. This Count is asserted against Lister under Section 15 of the Securities Act, 15 U.S.C. § 77o.

84. Defendant Lister, by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts was, at the time of the wrongs alleged herein, a controlling person within the meaning of Section 15 of the Securities Act.

85. Defendant Lister had the power and influence and exercised the same to cause an unlawful investment scheme.

86. Defendant Lister continuously touted his credentials as a high-experienced, cryptocurrency expert.

87. Lister knew or should have known that he was required to seek proper registration though the SEC.

88. By virtue of the conduct alleged herein, Lister is liable for the wrongful conduct complained of herein and is liable to Plaintiff for rescission and/or damages suffered.

## COUNT V. CIVIL CONSPIRACY (ALL DEFENDANTS)

89. Plaintiff repeats, realleges and incorporates the allegations and facts contained in Paragraphs 1 through 89 above, as if fully set forth herein.

90. Defendants acted in concert to further the fraudulent and unlawful investment scheme as outlined above.

91. All of the Defendants had specific and personal knowledge of Lister's actions and contributed financial resources and other support to Lister to further this scheme.

10

92. Defendants together knowingly failed to make the disclosures outlined above, made material misrepresentations, and omitted key information regarding the unlawful scheme.

93. Defendants knowingly conspired with Lister in his misrepresentations and/or failures to disclose material facts regarding the unlawful investment scheme.

94. Defendants knowingly conspired with Lister to promote Lister's unlawful investment scheme.

95. Defendants proceeded to commit overt acts in furtherance of the conspiracy by in fact by contributing financial support, promoting Lister's abilities, and making representations of Lister's competency.

96. In doing so, Defendants agreed to violate or disregard the law.

97. Defendants' collective conduct, misrepresentations, and/or omissions were unlawful, as alleged more fully above in Counts of this Complaint.

98. Plaintiff and justifiably relied upon the unlawful misrepresentations and/or omissions Defendants made as part of the conspiracy.

99. As a result of Defendants' conspiracy, Plaintiff incurred damages as set forth more fully above.

100.     Absent Defendants' conspiracy, Plaintiff would not have invested any money with Lister.

101.     As a result of Defendants' conspiracy, Plaintiff and the Class have been damaged and are entitled to recoverable relief.

### COUNT VI. UNJUST ENRICHMENT (ALL DEFENDANTS)

102.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action against all Defendants.

11

103.     By contributing approximately $100,000 to Lister and the Defendants, Plaintiff conferred a benefit upon Defendants, who unjustly received and retained economic gain.

104.     Defendants pooled financial resources and used Plaintiff's capital to reap an economic benefitted.

105.     Defendants appreciated or knew that the investment scheme was unlawful and that material misrepresentations were made in furtherance of the scheme.

106.     Defendants accepted, received, and/or retained economic benefit from Plaintiff and the Class by knowingly refusing to return his funds when they were repeatedly demanded.

107.     Under the circumstances, it was inequitable for Defendants to retain profits and the benefit of the bargain, and Plaintiff is entitled to commensurate relief.

108.     Plaintiff is entitled to compensatory damages in excess of $150,000.

WHEREFORE, Plaintiff demand judgments against Defendants as follows: Declaring that Lister is liable to Plaintiff under Section 15 of the Securities Act; Requiring an accounting of the funds and assets rightfully belonging to Plaintiffs; Ordering rescission of the investments made by Plaintiffs in the unregistered securities, and/or compensatory damages;

A.  Ordering compensatory damages in excess of $150,000;
B.   Awarding punitive damages in the amount allowable under Wisconsin law;
C.  Awarding Plaintiffs pre-judgment interest;
D.  Awarding Plaintiffs the costs of this action, including reasonable attorneys' fees and disbursements; and
E.  Granting such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A TWELVE (12) PERSON JURY**

12

Dated this 6ᵗʰ day of July, 2022.

                                 SmithAmundsen, LLC
                                 Attorneys for Plaintiff

                                 *Patrick J. Lubenow – electronically signed*

By:          _____

                                 Patrick Lubenow
                                 State Bar No. 1006600

<u>MAILING ADDRESS</u>
330 East Kilbourn Avenue
Suite 1100, Tower 1
Milwaukee WI 53202-3170
Phone No. (414) 847-6138
plubenow@smithamundsen.com

13

I _____ am Managing Wilson's
Wilson Rodriguez

funds in cryptocurrency with a fee of

3%. Upon request, I will send requested

amount back to _____ within 1 week.
Wilson Rodriguez

EXHIBIT
A

Scanned with CamScanner